UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREA PAPARELLA,

                    Plaintiff,

-against-

LIDDLE & ROBINSON, L.L.P., et al.,

                    Defendants.

1:18-cv-09267 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Andrea Paparella ("Plaintiff") commenced this action in New York state court against Liddle & Robinson, L.L.P. ("L&R"), Jeffrey Lew Liddle, Blaine H. Bortnick, David I. Greenberger, James W. Halter, and James R. Hubbard (together, "Defendants"), alleging sex discrimination in connection with Plaintiff's prior employment as an attorney at L&R. *See generally* ECF No. 1-1 ("Compl."). Defendants removed this action to federal court. *See* ECF No. 3. Now pending before the Court is Plaintiff's motion to remand back to New York state court. *See* ECF No. 31. For the following reasons, Plaintiff's motion to remand is GRANTED.

## BACKGROUND

Plaintiff graduated law school in 2003 and joined the law firm L&R as an associate in 2006. *See* Compl. ¶¶ 10-11. L&R promoted Plaintiff to partner in 2012. *See id*. ¶ 45. She departed the firm in 2015. *See id*. ¶ 4. Plaintiff alleges that, throughout her tenure at L&R, Defendants "treated Plaintiff less well than her male peers," and after her departure, Defendants "failed to pay Plaintiff owed compensation." *Id*. ¶¶ 2, 5.

Plaintiff filed the instant suit in New York Supreme Court, New York County, on April 16, 2018. *See generally id*. On its face, the Complaint alleges 13 causes of action under state and local law: violations of the New York City Human Rights Law ("NYCHRL") (Counts 1-4),

violation of the New York Labor Law ("NYLL") (Count 5), breach of contract (Count 6), promissory estoppel (Count 7), breach of fiduciary duty (Count 8), unjust enrichment or quantum meruit (Count 9), violation of the New York Equal Pay Act (Count 10), "prima facie tort" (Count 11), tortious interference with contractual relations (Count 12), and tortious interference with prospective business relations (Count 13). *See id*. ¶¶ 128-202.

The Complaint contains over 100 paragraphs detailing factual allegations in support of Plaintiff's claim that Defendants treated her less well than her male peers. *See generally id*. ¶¶ 1-127. For example, Plaintiff alleges that, while she was an associate at L&R, "[m]en were preferred in pay and assignments[,]" and "[d]erogatory language in reference to female attorneys' appearance was used, including toward Plaintiff." *Id*. ¶¶ 14-15. Plaintiff handled "cases that generated fees similar to male partners, but . . . with vastly less resources." *Id*. ¶ 27. An attorney promoted to partner the same year as Plaintiff, who had obtained for the firm "about 1% of what Plaintiff originated" in fees, "was paid substantially more than Plaintiff[] and the one other female partner." *Id*. ¶¶ 53, 60. The law firm "recognize[d] male associate contributions on its website" but "deleted" or made "invisible" any recognition of female attorneys, including Plaintiff. *Id*. ¶¶ 62-63. Plaintiff originated more fees for the firm in 2015 than every other partner except one, even as Plaintiff departed the firm four months into the year, but Defendants "never paid Plaintiff her owed compensation for these fees . . . ." *Id*. ¶¶ 94-95. Finally, Plaintiff was "deprived of vested funds in L&R's profit sharing plan" yet "is aware of no man whose withdrawal was obstructed like this." *Id*. ¶¶ 118, 121.

Defendants removed the action to this Court on October 10, 2018. *See* ECF No. 1. Defendants claimed that, although "the Complaint was filed in state court and purports to assert a state law claim," relief based on the allegation concerning "L&R's profit sharing plan" is

"necessarily federal, and therefore removable, under the complete preemption doctrine" of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. *Id.* ¶¶ 8-11. Thereafter, on November 9, 2018, Defendants filed motions to dismiss, including on grounds that the Court should decline to exercise supplemental jurisdiction over the state law claims in the Complaint. *See* ECF Nos. 9-10, 14-15, 17-18.

Before the parties fully briefed the motions to dismiss, Plaintiff filed a motion to remand on February 14, 2019. *See* ECF No. 31. In support of the motion to remand, Plaintiff argued that the Complaint asserted only state and local law claims. *See generally* ECF No. 33 ("Br."). Plaintiff further argued that the allegation referencing "L&R's profit sharing plan" was an example of sex discrimination in support of Plaintiff's state and local law claims, not a federal claim under ERISA. *See id.* Also on February 14, 2019, Plaintiff filed, with leave of court, a First Amended Complaint, omitting any reference to the profit sharing plan. *See* ECF No. 30.[1] In February 2019, the parties filed four letter briefs regarding remand based on ERISA preemption and the Court's exercise of supplemental jurisdiction. *See* ECF Nos. 40, 42, 44, 45. Defendants filed their memorandum of law in opposition to the motion to remand on February 28, 2019. *See* ECF No. 51 ("Opp."). Plaintiff filed her reply on March 6, 2019. *See* ECF No. 59 ("Reply").

On September 25, 2019, the Court denied the motions to dismiss as moot in light of the filing of the FAC. *See* ECF No. 61. On November 15, 2019, the Court stayed the action pending the outcome of related bankruptcies. *See* ECF No. 63. This action was reassigned to the undersigned on September 19, 2022. *See* ECF No. 82. On December 8, 2022, the Court lifted

---

[1] The First Amended Complaint was rejected on the Court's electronic filing system as deficient and, with leave of Court, Plaintiff filed a corrected version of the First Amended Complaint on February 21, 2019. *See* ECF No. 43 ("FAC").

the stay because, on November 22, 2022, the Bankruptcy Court modified the automatic stay to

permit this action to proceed.  *See* ECF No. 91.  Therefore, Plaintiff's motion to remand is now

ripe for resolution.  *See* ECF No. 31.

## STANDARD

"An action filed in state court may be properly removed by a defendant to federal court in

'any civil action . . . of which the district courts of the United States have original jurisdiction.'"

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017)

(quoting 28 U.S.C. § 1441(a)).  "The district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

"The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden

of demonstrating that the district court has original jurisdiction."  *McCulloch Orthopaedic*

*Surgical Servs., PLLC*, 857 F.3d at 145; *see Backer v. Cooperatieve Rabobank U.A.*, 338 F.

Supp. 3d 222, 231 (S.D.N.Y. 2018) ("The party seeking to preserve removal has the burden of

proving that subject matter jurisdiction exists." (internal citation omitted)).  "Any doubts

regarding the propriety of removal are resolved in favor of remand, and 'federal courts construe

the removal statute narrowly.'"  *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292

(S.D.N.Y. 2009) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

"Under the 'well-pleaded complaint rule,' a defendant generally may not 'remove a case

to federal court unless the *plaintiff's* complaint establishes that the case arises under federal

law.'"  *McCulloch Orthopaedic Surgical Servs., PLLC*, 857 F.3d at 146 (quoting *Aetna Health*

*Inc. v. Davila*, 542 U.S. 200, 207 (2004)).  However, as an exception to this rule, a "defendant

may properly remove a state-law claim when a federal statute 'wholly displaces the state-law

cause of action,' such that the claim, 'even if pleaded in terms of state law, is in reality based on federal law.'"  *Id*. (quoting *Davila*, 542 U.S. at 207-08).

ERISA is a federal statute that "provides for the wholesale displacement of certain state-law claims."  *Id*.  Under Section 502(a)(1)(B) of ERISA, "a participant or beneficiary may bring an action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'"  *Id*. (quoting 29 U.S.C. § 1132(a)(1)(B) ("ERISA § 502(a)(1)(B)")).  "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."  *Davila*, 542 U.S. at 208. Nevertheless, "the analysis of ERISA preemption must start with the presumption that 'Congress does not intend to supplant state law.'"  *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 59 (2d Cir. 2010) (quoting *Gerosa v. Savasta & Co.*, 329 F.3d 317, 323 (2d Cir. 2003)).  "Complete preemption 'must be applied sparingly and with great restraint.'"  *Nuzzo v. Verizon N.Y., Inc.*, No. 04-cv-03614, 2004 WL 1872708, at *2 (S.D.N.Y. Aug. 19, 2004) (quoting *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 n.5 (2d Cir. 2003)).

In *Aetna Health Inc. v. Davila*, the Supreme Court established a two-part test to determine when a state law claim is completely preempted by ERISA and therefore subject to federal subject matter jurisdiction.  *See* 542 U.S. at 210.  "Under the first prong, the claim must be brought by 'an individual [who], at some point in time, could have brought his claim under ERISA § 502(a)(1)(B).'"  *McCulloch Orthopaedic Surgical Servs., PLLC*, 857 F.3d at 146 (quoting *Davila*, 542 U.S. at 210).  In making this determination, courts consider: "(1) whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B) and also (2) whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)."  *Id*.  "Under the second prong of the *Davila* test, the claim

must involve 'no other independent legal duty that is implicated by a defendant's actions.'"  *Id.*
(quoting *Davila*, 542 U.S. at 210).  "[A] state-law claim is completely preempted by ERISA only
if both prongs of the test are satisfied."  *Id.*

For purposes of determining whether subject matter jurisdiction exists following removal,
courts look to the operative complaint at the time of removal.  *See In Touch Concepts, Inc. v.
Cellco P'ship*, 788 F.3d 98, 100 (2d Cir. 2015) ("After proper removal to federal court, post-
removal amendments generally do not destroy statutory subject-matter jurisdiction."); *Backer*,
338 F. Supp. 3d at 227 n.3 ("Because whether this Court has subject matter jurisdiction is
determined at the time of removal, this Court relies on the allegations of the Complaint.").  "A
plaintiff's later attempts to narrow the scope of her claims, so as to eliminate federal claims or
defenses, do not erase the Court's subject matter jurisdiction."  *Maguire v. A.C. & S., Inc.*, 73 F.
Supp. 3d 323, 328 (S.D.N.Y. 2014).

However, even if jurisdiction existed at the time of removal, the elimination of all federal
claims after removal bears on the court's exercise of supplemental jurisdiction.  *See F5 Cap. v.
Pappas*, 856 F.3d 61, 77 & n.14 (2d Cir. 2017) (indicating that courts may dismiss or remand
actions where a post-removal amendment eliminates the basis for federal jurisdiction); *Maguire*,
73 F. Supp. 3d at 328 (concluding that "later elimination of federal claims and defenses, so as to
leave standing only state-law claims, may bear on whether the Court chooses to exercise
supplemental jurisdiction").  Where no federal claims remain, the court "must reassess its
jurisdiction over the case by considering several related factors – judicial economy, convenience,
fairness, and comity."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (citing
*Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir. 1996)).  Generally, "if
all federal claims are dismissed before trial, the state claims should be dismissed as well."  *Id.*

6

(quoting *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)) (internal brackets and

ellipses omitted).

## DISCUSSION

Plaintiff argues that this action should be remanded to state court because the Complaint

asserts only state and local law claims that are not preempted by ERISA.  *See* Br. at 1-5.

Plaintiff further argues that she should be awarded attorney's fees for the instant motion because

removal was improper.  *See id*. at 2.  Defendants argue that ERISA completely preempts the

Complaint and that attorney's fees are not warranted.  *See* Opp. at 3-9.  Additionally, Defendants

argue that, should the Court resolve the preemption issue and consider the FAC, it should decline

to exercise supplemental jurisdiction and dismiss the case on that basis.  *See* ECF No. 40 at 2.

### I. ERISA Complete Preemption

The parties do not dispute that Plaintiff is "the type of party" that could bring a claim

under ERISA.  *McCulloch Orthopaedic Surgical Servs., PLLC*, 857 F.3d at 146; *see* Reply at 2

("The plaintiff does not dispute that she 'could have' brought a claim under ERISA . . . ."); Opp.

at 3-4.  Rather, Plaintiff argues that ERISA does not preempt the Complaint because her claims

(1) cannot be construed as a colorable claim under ERISA and (2) implicate legal duties

independent from ERISA.  *See* Reply at 3-4.  The Court agrees with Plaintiff on both points.

To satisfy the first prong of the *Davila* test for ERISA preemption, the party seeking to

preserve federal jurisdiction must show that "the *actual claim* that the plaintiff asserts can be

construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)."  *McCulloch Orthopaedic*

*Surgical Servs., PLLC*, 857 F.3d at 146.  ERISA allows a plaintiff "to recover benefits due to

him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his

rights to future benefits under the terms of the plan."  *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232,

242 (2d Cir. 2014) (quoting ERISA § 502(a)(1)(B)).  "A colorable ERISA claim exists when the

claim implicates coverage and benefit determinations as set forth by the terms of the ERISA

benefit plan."  *McCulloch Orthopaedic Surgical Servs., PLLC*, 857 F.3d at 149 (internal

quotations and citation omitted).

Here, Plaintiff's claims do not satisfy the first prong of *Davila* because they cannot be

construed as a colorable claim under ERISA.  At most, the Complaint alleges that Plaintiff was

"deprived of vested funds in L&R's profit sharing plan" and incorporates-by-reference that

allegation into each cause of action.  Compl. ¶¶ 118; *see* Opp. at 3-4.  However, the Complaint

does not seek coverage and benefit determinations "under the terms of the plan."  *Wurtz*, 761

F.3d at 242-43.  Indeed, the Complaint does not allege any terms of the alleged "profit sharing

plan."  Compl. ¶¶ 118.  Nor does the Complaint seek to recover, enforce, or clarify Plaintiff's

"vested funds" as part of the relief sought.  *See id*. at p. 24 ("Request for Relief").  Instead, the

Complaint enumerates several other forms of relief Plaintiff seeks from Defendants, including

"back-pay," "reinstatement or front pay," "liquidated damages," and "compensatory damages for

severe emotional distress . . . ."  *Id.*; *see, e.g.*, *Denniston v. Taylor*, No. 98-cv-03579, 2004 WL

226147, at *6 (S.D.N.Y. Feb. 4, 2004) (concluding ERISA did not preempt claim where the

plaintiff sought "to recover cash damages from the employer(s), not benefits payable through the

plans").  Put simply, the "claims in plaintiff['s] complaint seek to do none of the[] things" that an

ERISA claim would seek to do.  *Wurtz*, 761 F.3d at 242 (concluding that the plaintiff's claims

could not "be construed as colorable" under ERISA where they "do not seek to 'enforce' or

'clarify' their rights 'under the terms of [their] plan[s]' because the state right they seek to

enforce . . . is not provided by their plans").

Plaintiff's claims also do not satisfy the second prong of *Davila*. "With respect to that prong, Defendant[s] must prove that [their] actions implicated no legal duty independent of ERISA, such that [their] potential liability 'derives entirely from the particular rights and obligations established by the benefits plan.'" *Handlowitch v. Verizon Commc'ns, Inc.*, No. 18-cv-00617, 2019 WL 1789708, at *3 (S.D.N.Y. Apr. 24, 2019) (quoting *Davila*, 542 U.S. at 213-14). A claim does not satisfy this standard where it "*could* have been brought under ERISA, but *also* rests on another independent legal duty that is implicated by the defendant's actions." *McCulloch Orthopaedic Surgical Servs., PLLC*, 857 F.3d at 150 (quoting *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 328 (2d Cir. 2011)) (internal quotation marks and brackets omitted).

Here, Plaintiff's claims are largely unrelated to – and independent from – any employee profit sharing plan. All of Plaintiff's claims arise out of alleged violations of state and local law and substantially focus on alleged sex discrimination by Defendants against Plaintiff. *See generally* Compl. ¶¶ 128-202. The only allegation in the Complaint that expressly references the profit sharing plan does so as part of Plaintiff's allegations of repeated sex discrimination: Plaintiff alleges that she was "deprived of vested funds in L&R's profit sharing plan" and "is aware of no man whose withdrawal was obstructed like this." *Id*. ¶¶ 118, 121. Liability for these claims turns on state and local law, including the NYCHRL, rather than rights and obligations established by the terms of the profit sharing plan – terms that appear nowhere in the Complaint. In other words, the Complaint has "sufficiently alleged that Defendant's actions implicate a legal duty independent of ERISA." *Handlowitch*, 2019 WL 1789708, at *3 (finding that the "Defendant fail[ed] to satisfy the second prong of the *Davila* test" because the plaintiff's claims were "largely unrelated to pension plan benefits" and "principally focused on [the

9

p]laintiff's damages resulting from [the d]efendant's age-discrimination in violation of the NYCHRL").

Defendants' contention that the allegation that Plaintiff was "deprived of vested funds in L&R's profit sharing plan" is sufficient to trigger complete preemption under ERISA is unavailing.  Opp. at 1.  The Second Circuit has held that claims may reference ERISA plans without implicating the ERISA statutory scheme.  In *Stevenson v. Bank of New York Co.*, for example, the plaintiff asserted claims for, among other things, breach of contract, promissory estoppel, and tortious interference under New York law, and these claims referenced the plaintiff's "profit sharing accounts" and "Profit Sharing plan" maintained by the defendants.  609 F.3d at 60-62.  The Second Circuit concluded that ERISA did not preempt these claims because they "ma[d]e reference to ERISA plans solely as a means of describing" facts underlying the state law claims and therefore did not affect the referenced plans "in a way that threatens ERISA's goal of uniformity."  609 F.3d at 62.  Similarly in *McCulloch Orthopaedic Surgical Services, PLLC v. Aetna Inc.*, the Second Circuit concluded that the plaintiff's complaint was not preempted by ERISA where "[t]he health care plan simply provide[d] the context for [the plaintiff]'s claim" under state law.  857 F.3d at 149; *see also Wurtz*, 761 F.3d at 243 ("[W]hile defendants' reimbursement claims relate to plaintiffs' plans, this is not the test for complete preemption.  Plaintiffs' claims do not derive from their plans or require investigation into the terms of their plans[.]").  Here, too, the Complaint's passing reference to a profit sharing plan provides context and describes facts in support of Plaintiff's state and local law claims, without threatening ERISA's goal of uniformity.  *See generally* Compl. ¶¶ 118, 121.

District courts within the Second Circuit have previously rejected arguments that ERISA completely preempts employment disputes and discrimination cases similar to this case.  In *Handlowitch v. Verizon Communications, Inc.*, the plaintiff there, like here, commenced an action in New York State court for employment discrimination against his former employer. 2019 WL 1789708, at *1.  The plaintiff alleged that he had been fired to prevent him from qualifying for and receiving certain pension benefits and severance money post-termination.  *Id*. The defendant there, like here, removed the action to the Southern District of New York on the basis of complete preemption, and the plaintiff then moved to remand.  *Id*.  The court granted the motion to remand, reasoning that the plaintiff's claims were "largely unrelated to pension plan benefits" and instead "principally focused on [the p]laintiff's damages resulting from [the d]efendant's age-discrimination in violation of the NYCHRL."  *Id*. at *3.

Similarly, in *Nuzzo v. Verizon New York Inc.*, the plaintiff commenced an action in state court asserting state law employment discrimination claims. 2004 WL 1872708, at *1-2.  The defendant removed the action on the basis of complete ERISA preemption, arguing that the plaintiff's allegations "suggest" that his discharge related to "pension due under [the defendant's] employee benefit plans."  *Id*. at *4.  The plaintiff filed a motion to remand.  *Id*. at *1.  The court concluded that the plaintiff's "discrimination claim [was] made pursuant to a generally applicable state anti-discrimination law that is not premised on the existence of an ERISA plan," that the allegedly discriminatory conduct was not alleged to have occurred "solely or even principally because [the defendant] wished to avoid paying him benefits under its ERISA plan," and that "the existence of an ERISA plan is at best incidental to this dispute."  *Id*. at *4.  The court therefore remanded the action to state court.  *Id*. at *6.

In *Denniston v. Taylor*, the plaintiff asserted a state law breach of contract claim alleging that he had "not been paid all of the salary and bonus amounts to which he [was] entitled" in the months following his termination.  2004 WL 226147, at *6.  The court concluded that the claim was not preempted by ERISA because the plaintiff there, like here, sought "to recover cash damages from the employer(s), not benefits payable through the plans."  *Id.*; *see also Sheer v. Israel Disc. Bank of N.Y.*, No. 06-cv-04995, 2007 WL 700822, at *1, *4 (S.D.N.Y. Mar. 7, 2007) (granting motion to remand "action for breach of an employment contract and violations of New York State and New York City anti-discrimination laws" because the "employment contract at issue here, together with its various termination benefits, does not fall within the purview of ERISA"); *Collins v. S. New Eng. Tel. Co.*, 617 F. Supp. 2d 67, 82-83 (D. Conn. 2009) (concluding that preemption did not apply where the "state discrimination claim 'relates to' the ERISA plan, but only in a tenuous way, since [the defendant]'s alleged discriminatory behavior involved depriving [the plaintiff] of severance pay as part of a larger pattern of mistreatment"); *Grof-Tisza v. Hous. Auth. of City of Bridgeport*, No. 11-cv-00149, 2011 WL 1775992, at *1 (D. Conn. May 10, 2011) (remanding sex discrimination employment claims to state court because, "[a]lthough Plaintiff's claims reference plan benefits, her allegations do not concern the administration of the plan itself or Plaintiff's rights under the plan[] . . . [and] plan specifics would be invoked only in the determination of damages if Plaintiff were to succeed"); *c.f. Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 90 (2d Cir. 2010) ("Simply put, appellants' complaint alleges plain vanilla employment discrimination.  As 'masters of the complaint,' plaintiffs were entitled to construct their complaint in this fashion, regardless of the existence of collective agreements.  Thus the complaint, as written, is not preempted by either the LMRA or the NLRA, and the District Court lacked removal jurisdiction based on preemption.").

Any relationship between the Complaint and an ERISA plan is even more tenuous here than it was in *Handlowitch*, *Nuzzo*, or *Denniston*. *See supra*, at 7-9. In short, Defendants have not borne their burden of "demonstrating that the district court has original jurisdiction" under ERISA. *McCulloch Orthopaedic Surgical Servs., PLLC*, 857 F.3d at 145. Accordingly, the Court finds that ERISA does not completely preempt the Complaint; therefore, removal on that basis was improper and the case should be remanded. *See, e.g.*, *id*. at 152 (ordering the case be remanded because ERISA did not preempt the plaintiff's claims).

## II. Supplemental Jurisdiction

Because Defendants have not demonstrated that the Court had original jurisdiction over the Complaint at the time of removal, the Court need not consider whether it should exercise supplemental jurisdiction over Plaintiff's FAC. *See id*. at 145. Even assuming ERISA preempted the Complaint and the Court therefore had original jurisdiction, however, remand would still be appropriate because the Court would decline to exercise supplemental jurisdiction over the FAC. *See, e.g.*, *E. States Health & Welfare Fund v. Philip Morris V. Puerto Rican Ilgwu Health & Welfare Fund*, 11 F. Supp. 2d 384, 388 (S.D.N.Y. 1998) (explaining that either the plaintiff's claims were preempted by ERISA or they were not preempted but only state-law claims would remain, so the case was "heading back to state court under any conceivable scenario").

Following removal, if "plaintiffs drop their federal claims, federal courts have the discretion to determine whether to remand the state claims or to retain the supplemental jurisdiction that was acquired at the time of removal under 28 U.S.C. § 1367." *Nanavati v. New Sch. for Soc. Rsch.*, No. 20-cv-00935, 2020 WL 1876359, at *2 (S.D.N.Y. Apr. 15, 2020) (internal citation omitted); *Maguire*, 73 F. Supp. 3d at 328 (noting that post-removal

13

amendments bear on courts' exercise of supplemental jurisdiction).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia v. Sung M. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Where "plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court." *Sadallah v. City of Utica*, 383 F.3d 34, 40 (2d Cir. 2004); *see Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))).

Here, the balance of factors all "point[s] toward declining to exercise jurisdiction" over the FAC.  *Valencia*, 316 F.3d at 305 (quoting *Cohill*, 484 U.S. at 350 n.7).  The FAC asserts only state and local law claims.  *See generally* FAC.  Defendants do not dispute that the FAC "dropped [Plaintiff's] federal claim," and urge the Court not to exercise supplemental jurisdiction over the remaining claims.  ECF No. 40 at 1-2.  The case is at a relatively early stage, as discovery has not been completed and no motions to dismiss or for summary judgment have been decided.  *See, e.g.*, *Valencia*, 316 F.3d at 306 (concluding that supplemental jurisdiction should have been declined given the "relatively early stage of the case" where most discovery had been completed but dispositive motions and trial had not).  Remanding the action would return the action to Plaintiff's chosen forum and state courts are well equipped to adjudicate the remaining state and local law claims.

Defendants' suggestion that the Court should dismiss, rather than remand, this action is unavailing.  A district court has discretion to either remand or dismiss a case when it declines to exercise supplemental jurisdiction.  *See, e.g.*, *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 311 (S.D.N.Y. 2004) ("[W]hen a district court declines to exercise jurisdiction over state-law claims in a removed case, the Court may either remand or dismiss the state-law claims.").  Courts regularly remand actions where, like here, the plaintiff voluntarily dismisses all federal claims after the case has been removed.  *See, e.g.*, *Arthur Glick Truck Sales, Inc. v. H.O. Penn Mach. Co.*, 332 F. Supp. 2d 584, 586 (S.D.N.Y. 2004) (remanding after "the plaintiffs abandoned their sole federal claim"); *Nanavati*, 2020 WL 1876359, at *1-2 (remanding after removal where the plaintiff "amended his complaint, removing all federal claims") (collecting cases); *Amador v. City of N.Y.*, No. 20-cv-00956, 2021 WL 2809541, at *2 (S.D.N.Y. July 6, 2021) (remanding action "in light of the facts that no federal claims or defendants remain in the action, [and] the case has barely progressed since being removed to federal court"); *Nix v. Off. of Comm'r of Baseball*, No. 17-cv-01241, 2017 WL 2889503, at *4 (S.D.N.Y. July 6, 2017) ("Thus, courts generally grant motions to remand where, as here, a plaintiff has voluntarily dismissed his federal claims prior to the start of discovery, even when his 'manifest purpose' in doing so 'is to defeat federal jurisdiction.'" (internal citation omitted)); *Quire v. City of N.Y.*, No. 19-cv-10504, 2021 WL 293819, at *7 (S.D.N.Y. Jan. 28, 2021) (declining "to exercise supplemental jurisdiction over the remaining state law claims" and remanding following removal); *Meer Enters., LLC v. Kocak*, No. 18-cv-00006, 2018 WL 1901478, at *3 (S.D.N.Y. Apr. 20, 2018) (remanding based on a "post-removal amendment" and holding that "it is not manipulative for a plaintiff to seek to bring a case in state court by asserting only state claims, avoiding diversity, or amending a complaint as of right after removal").

15

Accordingly, even if the Court had original jurisdiction at the time of removal, it would decline to exercise supplemental jurisdiction over the FAC and instead remand the case to state court. *See, e.g.*, *Valencia*, 316 F.3d at 305 (concluding that the district court should have declined to exercise supplemental jurisdiction); *Maddaloni Jewelers, Inc.*, 354 F. Supp. 2d at 311 (remanding case following dismissal of federal claims "[b]ecause this case originated in state court and was removed to federal court").

## III.   Attorney's Fees

In her opening brief, Plaintiff argues that she should be awarded attorney's fees in connection with the instant motion under 28 U.S.C. § 1447(c) because removal was improper. *See* Br. at 3.  Defendants argue that attorney's fees are not warranted because Plaintiff commenced this motion *pro se*, and Defendants' removal was not objectively unreasonable or done in bath faith. *See* Opp. at 8-9.  Plaintiff did not renew her argument for attorney's fees in reply. *See generally* Reply.

"Under 28 U.S.C. § 1447(c), a district court may award attorneys' fees when it remands a case to state court based on lack of subject matter jurisdiction[.]" *Circle Indus. USA v. Parke Constr. Grp., Inc.*, 183 F.3d 105, 108 (2d Cir. 1999).  Whether to award fees is "left to the district court's discretion." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005).  "[A]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011) (quoting *Martin*, 546 U.S. at 126).  "A basis for removal is 'objectively reasonable' if the removing party had a colorable argument that removal was proper." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014).

16

The Court declines to award fees here.  Although the Court reaches its decision to remand without hesitation, it finds that Defendants' basis for removal was not so objectively unreasonable as to warrant an award of attorney's fees.  *See, e.g.*, *Gregorian v. N.Y. Life Ins. Co.*, No. 07-cv-05210, 2009 WL 179217, at *6 (E.D.N.Y. Jan. 26, 2009) (declining to award fees after determining ERISA did not preempt state law claims given the "grey middle zone in which age [discrimination] and ERISA litigators may find themselves"); *Frontier Ins. Co. v. MTN Owner Tr.*, 111 F. Supp. 2d 376, 381 (S.D.N.Y. 2000) (declining to award fees since the defendants had "at least a colorable basis for removal"); *Tamm v. Cincinnati Ins. Co.*, 858 F. App'x 412, 413 (2d Cir. 2021) (affirming denial of costs and fees under Section 1447(c) where there was "an objectively reasonable basis for removal").

Plaintiff argues that "two technical failures" in the removal process – i.e., that the notice of removal was untimely and did not include the consent of all Defendants – further support an award of fees.  Br. at 3.  The Court finds that such failures would not warrant fees in this case, especially where they are waivable, procedural defects, and Plaintiff did not raise them within 30 days of the filing of the notice of removal.  *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *see, e.g.*, *Glatzer v. Cardozo*, No. 05-cv-10113, 2007 WL 6925941, at *4 (S.D.N.Y. Sept. 26, 2007) (finding "[n]o fee award is warranted" where "the procedural defects raised by Plaintiff are 'modal or formal, and can be waived'" (internal quotation marks and citation omitted)).

Accordingly, the Court denies Plaintiff's request for fees pursuant to 28 U.S.C. § 1447(c). *See, e.g.*, *Frontier Ins. Co.*, 111 F. Supp. 2d at 381 (declining to award fees).

17

## CONCLUSION

For the reasons stated above, Plaintiff's motion to remand is GRANTED.  The Clerk of

Court is respectfully directed to REMAND this action to the New York Supreme Court, New

York County and CLOSE this case.

Dated: March 3, 2023
       New York, New York

                                        SO ORDERED.

                                        JENNIFER L. ROCHON
                                        United States District Judge